UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X
BONNIE SCHNEIDER,

                Plaintiff,

-vs-

CUDDEBACKVILLE FIRE
DEPARTMENT; CUDDEBACKVILLE
FIRE DISTRICT, TOWN OF DEERPARK,
CHRIS SIBILIA, sued in his individual
capacity,

                Defendants.
------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

**11 CIV 01499**

**JUDGE KARAS**

FILED
U.S. DISTRICT COURT
2011 MAR -4
S.D. OF N.Y.

### I  INTRODUCTION

1. Plaintiff brings this sexual harassment and retaliation action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983 and New York State law. After plaintiff objected to the hostile work environment, retaliation, defendants denied her full membership to the organization. Plaintiff sues for damages and equitable relief.

### II  PARTIES

2. Plaintiff, Bonnie Schneider, is a woman who resides in Cuddebackville, New York.

3. Defendant, Cuddebackville Fire Department, provides firefighting services to the Town of Deerpark. The Fire Department receives funding from Town of Deer Park.

4. Defendant, Cuddebackville Fire District, is a municipal organization organized pursuant to the laws of the State of New York and, as such, it may sue and be

sued.

5. Defendant, Town of Deerpark, is a municipality organized pursuant to the laws of the State of New York. Town of Deerpark funds the Cuddebackville Fire Department and Districts.

6. At all times relevant to this action, defendant, Chris Sibilia, was first lieutenant at the Cuddebackville Fire Department.

### III  JURISDICTION & VENUE

7. As plaintiff brings this action to enforce 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, this Honorable Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(4) & (4) and 42 U.S.C. §§ 1983, 1988 and 2000e *et seq*.

8. On March 11, 2010, plaintiff timely filed a charge of discrimination with the State Division of Human Rights and the Equal Employment Opportunity Commission.

9. As plaintiff received her "Right to Sue" letter from EEOC on February 1, 2011, her Title VII claim is properly before this Court.

10. As the state law cause of action stems from the same nucleus of operative facts as the federal claims, this Court has subject matter jurisdiction over it pursuant to 28 U.S.C. § 1367.

11. As the events giving rise to this action arose in County of Orange, this case is properly venued in Southern District of New York.

### IV  FACTUAL AVERMENTS

12. Plaintiff began working for the Fire Department on June 4, 2009. She was a

probationary employee eligible to become a full member of the Department, which would vote on her candidacy. During plaintiff's affiliation with the Department, it did not have a written sexual harassment policy.

13. In June 2009, members of the Department went to a local pizza parlor for a get-together after a drill. Chris Sibilia, the Department's First Lieutenant, tried to thrust his pelvis into plaintiff's buttocks. He referred to this maneuver as "making a Bonnie sandwich."

14. On July 5, 2009, plaintiff's boyfriend, Mark Federico, was temporarily out of town. Federico had been associated with the Department for over 20 years. Aware that Federico was out of town, defendant Sibilia asked who was going to "service" plaintiff while her boyfriend was away. Objecting to Sibilia's sexual harassment, plaintiff walked away from Sibilia and told him, "you need to stop."

15. The next day, plaintiff's Jeep broke down. Plaintiff called the Department for assistance. Sibilia was sent over to drive plaintiff home. As he drove plaintiff home, Sibilia intentionally pinched plaintiff's hip/rear-end when he tried to help her use the seat belt. When plaintiff objected, Sibilia laughed.

16. The harassment continued on July 11, 2009, when the Department participated in a parade in Port Jervis. When the parade ended, Sibilia told plaintiff that he wished that Tina Bussancruch and plaintiff had been marching in front of him instead of his and the Chief's wife because he liked their "asses" better.

17. On July 18, 2009, the Department responded to a fire on Oakland Valley Road. After the fire was determined to be a "controlled burn" with a permit, Sibilia told

another Department member to bring plaintiff's Jeep back to the firehouse because she had to complete some paperwork at the scene of the fire. When plaintiff completed the paperwork and got into Sibilia's truck, he locked the doors and drove plaintiff around, insisting that they "make out."

18. Plaintiff told Sibilia to unlock the doors so that she could exit the truck, but he would not do so. Plaintiff was locked in Sibilia's truck against her will for approximately 15 minutes. During this time, Sibilia joked that plaintiff's boyfriend would be "pissed" that she was with him and not her boyfriend.

19. Plaintiff formally complained about Sibilia's sexual harassment on July 20, 2009, when she wrote a letter to the Department, handing it to First Assistant Chief Bob Cromie. In the letter, plaintiff outlined some of the harassment to which she had been subjected and asked that the Department take resolve the problem.

20. At some point after plaintiff handed in the letter, Robert Cromie and Toni Coppola, the Fire Department President, met with Sibilia to discuss plaintiff's allegations. Sibilia admitted that the allegations were true and then he resigned from the Department on the spot. However, Sibilia re-joined the Department approximately two weeks later, rescinding his resignation. The Department allowed Sibilia to rejoin the organization.

21. Defendants did not promptly and thoroughly investigate plaintiff's sexual harassment complaint.

22. While the District hired a lawyer, Frank Simeone, Esq., to investigate plaintiff's sexual harassment complaint, when he and plaintiff met at the Goshen Diner to

discuss her claims, Simeone did not have plaintiff's complete complaint letter. Plaintiff gave Simeone the names and phone numbers of her witnesses, including Federico, Bussancruch, Johnny Antonelli (who owned the pizzeria where Sibilia thrust himself into plaintiff), firefighter Tommy Hughes and Joe Pagan. None of these witnesses received phone calls pursuant to the sexual harassment investigation, and no one asked plaintiff to write out her version of events describing the sexual harassment.

23. Meanwhile, the Department president was complaining that the investigation was costing the Department too much money in legal fees. Plaintiff wrote a letter on October 2, 2009 asking that defendants bring the investigation to a speedy conclusion.

24. Three days later, plaintiff wrote another letter complaining that Sibilia was trying to intimidate her by stating that "if you don't do what Bob Cromie tells you to and get him mad he can make your life hell."

25. On October 25, 2009, plaintiff wrote another letter, this time advising the Department that Sibilia was pressuring her to write a letter to his lawyers. He wanted plaintiff to state in the letter that she would not press charges against him and that the allegations against him were not true.

26. The sexual harassment allegations against Sibilia turned some of the Department members against plaintiff. Many members stopped talking to plaintiff and ignored her at the fire house.

27. On December 3, 2009, the Department held a vote on plaintiff's candidacy to

become a full member. The vote was 7 for to 9 against permitting plaintiff to join as a full member. Contrary to past practice, plaintiff was not given a reason for her rejection. Also contrary to past practice, the Department did not provide plaintiff with a pre-vote interview in which she could explain why she wanted to permanently join the Department. As it is a volunteer fire department, the Department rarely turns down candidates for full membership.

28. Although plaintiff was qualified to be a full member of the Department and had gone to all the training sessions and drills, her candidacy was rejected. A few weeks before the vote, the Department announced at its November 2009 meeting that it was in dire need of EMT's. At the time, plaintiff was in the process of being certified as an EMT. Although it rejected plaintiff's candidacy for membership, the Department did accept Bussancruch as a full member even though she had gone to few, if any, classes, drills and training and had not fought any fires. Bussancruch only became involved with the Department because her boyfriend was a member. Once they broke up, Bussancruch moved away and resigned from the Department on February 4, 2010.

29. After plaintiff left the Department, she learned that one of the Department Commissioners, Tony Russo, was calling plaintiff a "slut." Plaintiff heard this from Anthony Marsh and her son, Timothy Ogle. In addition, Sibilia had been promoted to Captain. Robert Cromie, the Assistant Chief who advocated for plaintiff when she complained about sexual harassment, was demoted to firefighter.

30. Although plaintiff would not have received salary had she been accepted as a member of the department, full membership would have entitled her to significant non-monetary and job-related benefits as outlined under New York Volunteer Firefighters' Benefits Law § 1 et seq, including protections afforded to members' and their families against loss from death or injuries in line of duty, tax credits and deductions, mileage reimbursement, survivors' benefits and disability benefits and job-related training.

31. As the fire department performs a uniquely governmental function, its supervisors and members who voted on her candidacy are state actors for purposes of 42 U.S.C. § 1983.

32. As a result of the sexual harassment and retaliation, plaintiff has experienced pain and suffering and humiliation.

## V    CAUSES OF ACTION

33. Plaintiff incorporates the allegations in ¶¶ 1-32 as if fully re-stated herein.

34. In subjecting plaintiff to a hostile work environment on account of her gender, defendant Chris Sibilia violated the Equal Protection Clause of the U.S. Constitution, as made actionable through 42 U.S.C. § 1983.

35. In rejecting her candidacy because she resisted defendant Sibilia sexual harasssment, defendants retaliated against plaintiff and discriminated against her on account of gender in violation of the Equal Protection Clause of the U.S. Constitution, as made actionable through 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law.

## VI   PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court:

a. accept jurisdiction over this action;

b. empanel a jury to hear and decide this action;

c. award to plaintiff compensatory damages for pain and suffering and humiliation;

d. order defendants to grant plaintiff full membership in the Cuddebackville Fire Department;

e. award to plaintiff punitive damages on her federal claim against Sibilia;

f. award to plaintiff reasonable attorneys' fees and costs expended in litigating this action; and

g. order such other relief deemed just and proper.

Dated: February __, 2011

Respectfully submitted,

STEPHEN BERGSTEIN

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for plaintiff